**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

_____

BILLIE INSKEEP,

      Plaintiff,

v.                                         No. CV 14-262 WJ/CG

CITY OF FARMINGTON, ROBERT MAYES,
ROBERT CAMPBELL, CORY STYRON,
and SHANA REEVES,

      Defendants.

**MEMORANDUM OPINION AND ORDER**
**GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
**ON COUNTS V THROUGH VIII OF THE COMPLAINT**

THIS MATTER comes before the Court upon Defendants' Motion for Summary

Judgment as to Counts V through VIII of the Complaint, filed July 22, 2014 (**Doc. 15**).   Having

reviewed the parties' briefs and applicable law, the Court finds that Defendants' motion is well-

taken and, therefore, is GRANTED.

**BACKGROUND**

Plaintiff was terminated by her former employer and subsequently filed this lawsuit

alleging the following federal and state claims:  Violations of the Fair labor Standards Act, 29

U.S.C. §216(b) (Count I); Violations of the Family and Medical Leave Act, 29 U.S.C.A. §

2615(a) (Counts II, III and IV); Interest in Continued Employment (Count V); Breach of Implied

Contract of Employment (Count VI); Retaliatory Discharge asserted under §1983 (Count VII);[1]

and Wrongful Termination (Count VIII).    Plaintiff alleges that she was fired in retaliation for

having taken leave under the Family and Medical Leave Act ("FMLA"), and that her supervisor

---

[1]   The Court describes the Complaint as alleged, without making any determinations regarding the viability of any
of these claims.

and her assistant schemed behind her back to undermine her leadership role as Aquatics Manager in the City of Farmington ("City").   Defendants contend that Plaintiff was fired for just cause and that they followed all required procedures for termination.

## I.        Plaintiff's Request for Discovery Under Rule 56(d)

Plaintiff contends that she is unable to respond to Defendants' summary judgment motion because more discovery is needed, and seeks to conduct such discovery under Fed.R.Civ.P. 56(d).  To invoke the shelter that rule 56(d) provides, a party must file a Rule 56(d) affidavit explaining "why facts precluding summary judgment cannot be presented."  *Campfield v. State Farm Mut. Auto. Ins. Co.*, 532 F.3d 1111, 1124 (10th Cir. 2008) (internal citation omitted).  To satisfy the requirements of Rule 56(d) and justify additional discovery, the Tenth Circuit Court of Appeals further explained that:

> a party seeking to defer a ruling on summary judgment under Rule 56(f) must (1) file an affidavit, *see Pasternak v. Lear Petroleum Exploration Inc.*, 790 F.2d at 832-33; (2) identify the probable facts not available, their relevance, and what steps have been taken to obtain those facts, (3) explain why facts precluding summary judgment cannot be presented; and (4) state with specificity how the desired time would enable the nonmoving party to meet its burden in opposing summary judgment.

*Committee for First Amendment v. Campbell*, 962 F.2d 1517, 1522 (10th Cir.1992).    Plaintiff seeks discovery on the following "fact issues":

1. the terms and provisions of the implied contract at issue
2. whether the implied contract was enforceable;
3. whether the implied contract terms in dispute were breached
4. whether Plaintiff had a reasonable expectation that the City would comply with the implied contract;
5. whether progressive discipline should have been applied in deciding to discipline and then terminate Plaintiff;
6. whether the City disciplined other employees on the basis of allegations that led to discipline of Plaintiff;
7. whether witnesses who did not testify at hearing will corroborate the City's findings and determinations on the issue of cause;
8. whether the City selectively applied discipline to Plaintiff;

9. whether the City Defendant's investigations regarding the work environment and allegations of misconduct by Plaintiff complied with City policy, constituted a fair and unbiased review of the facts, and did not take place on the basis of bad faith considerations;

10. whether the PIP ("Performance Improvement Plan") imposed against Plaintiff was objectively supported; and

11. whether the City suffered any adverse consequences due to any alleged misconduct on the part of Plaintiff.

Doc. 23-2 at 2, ¶11.   Plaintiff claims that she has had no opportunity to conduct any discovery, and this is true.  Formal discovery is just beginning in this case.   However, the fact that discovery is just beginning or that it is not complete cannot form the basis for deferring ruling on Defendants' summary judgment motion on Counts V-VIII.   *See Ben Ezra, Weinstein, & Co. v. Am. Online Inc.,* 206 F.3d 980, 987 (10th Cir. 2000) (a party may not invoke Rule 56[d] by simply stating that discovery is incomplete but must "state with specificity how the additional material will rebut the summary judgment motion"); *Garcia v. U.S. Air Force*, 533 F.3d 1170, 1179 (10th Cir. 2008) (accord).

In the above list, Plaintiff describes the subject matter areas into which she would like to inquire, but fails to identify with specificity what discovery she seeks.  She fails to list the probable facts on which discovery will be conducted, fails to explain how specific anticipated discovery will assist her in overcoming Defendants' summary motion on Counts V-VIII; does not state why facts precluding summary judgment cannot be presented; and fails to provide a desired time to conduct discovery.

Rule 56(d) is not a license for a fishing expedition.   *Lewis v. Ft. Collins*, 903 F.2d 752, 759 (10th Cir. 1990).  However, some of the "fact issues" listed by Plaintiff appear to be just that—excuses for a fishing expedition—in that they appear to have no connection to facts that could preclude summary judgment.   For example, Plaintiff seeks discovery on "the terms and provisions of the implied contract at issue" and "whether the implied contract was enforceable."

3

Doc. 23-2 at 2, ¶ 11.    One would assume that Plaintiff, having asserted a claim for breach of implied contract in her complaint, would  already know the terms and provisions of such implied contract.    Also, allegations in the complaint that Defendants breached the implied contract at issue are incompatible with the notion that the terms of that contract are not enforceable; otherwise, Plaintiff could be accused of making allegations that are  totally frivolous.    Because Plaintiff's affidavit fails to comply with the *Ben Ezra* standards, it is insufficient to invoke the protections of Rule 56(d).  Plaintiff's request for discovery is therefore DENIED, and the Court will rule on the summary judgment without allowing further discovery for Counts V-VIII.

## II.    Legal Standard

Summary judgment is appropriate when there are no genuinely disputed issues of material fact and, viewing the record in the light most favorable to the non-moving party, the movant is entitled to judgment as a matter of law.  *Bruner v. Baker*, 506 F.3d 1021, 1025 (10th Cir. 2007); *Boling v. Romer*, 101 F.3d 1336, 1338 (10th Cir. 1996).  Once the party moving for summary judgment properly supports its motion, it is incumbent on the non-moving party to respond with some showing of an issue of genuine material fact.  *Allen v. Denver Pub. Sch. Bd.*, 928 F.2d 978 (10th Cir. 1991), *overruled on other grounds by Kendrick v. Penske Transp. Svcs.,* 220 F.3d 1220, 1228 (10th Cir. 2000).   The non-moving party may not rest on averments in its pleadings, but instead must establish specific triable issues.  *Gonzales v. Miller Cas. Ins. Co. of Texas*, 923 F.2d 1417 (10th Cir. 1991).  The mere existence of some alleged, immaterial factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986).

**DISCUSSION**

In this motion, Defendants seek summary judgment on four counts, Counts V-VIII, which include Plaintiff's claim based on Interest in Continued Employment (best described as a substantive due process claim); Breach of Implied Contract of Employment; Retaliatory Discharge under §1983; and Wrongful Termination.

**I.      Undisputed Facts[2]**

Plaintiff worked for the City of Farmington ("City") from November 5, 2007 through June 27, 2013.  She held two positions, Assistant Aquatics Manager and Aquatics Manager, to which she was promoted on February 25, 2011.   Plaintiff took leave under the FMLA related to the birth of her daughter from February 14, 2013 through April 21, 2013.    Plaintiff was a salaried, exempt employee, was not a union member, and at the relevant time was a non-probationary employee.

Plaintiff oversaw operations and administration of the City's four swimming pools.  She supervised several employees, the number of which fluctuated seasonally.  Her supervisory chain was: Shana Reeves, Superintendent of Recreation; Cory Styron, Department Head over City Parks, Recreation and Cultural Affairs; and Robert Mayes, City Manager.  Under the applicable Personnel Rules, a non-probationary employee may be disciplined "for cause."  A Department Head may recommend termination of employment to the City Manager, providing a copy of the same to the employee.  A "pre-termination" meeting is scheduled, the employee is given notice, and the meeting is held.  The Department Head reports on that meeting to the City Manager, who makes a final decision.  If termination of employment is the decision, the former employee may request a post-termination, "full due process" appeal ("Appeal"), heard by an external hearing

---

[2]   The following facts are undisputed unless otherwise indicated, and are supported by exhibits referenced by the parties.

officer, assigned by the City Manager.[3]  Defendant notes that Plaintiff filed this lawsuit after the

Hearing Officer sustained Plaintiff's termination of employment.

The City of Farmington has Personnel Rules, which provides the following:

- that employees "may be disciplined for cause" and a non-exhaustive list of bases for discipline (Ex. 1 (§21-7-1);

- an employee's supervisors may reprimand, suspend, demote, or dismiss an employee "consistent with the type and severity of cause for disciplinary action" (§21-7-3);

- a department head (here, Cory Styron) may recommend termination of employment by providing a written recommendation to the employee, holding a pre-termination meeting with the employee, and submitting findings from the meeting to the City Manager (§21-7-7(a), (b));

- the City Manager decides whether to terminate employment (§21-7-7(c));

- An employee may appeal the decision to terminate employment (§21-7-9);

- the City Manager appoints "an external hearing officer" for the Appeal, §21-7-10(d), who holds a "full due process hearing," makes a record, and issues a final decision in writing which either confirms or rejects the end of employment (§21-7-10(e));

- the employee may be represented by counsel in the Appeal (§21-7-10(f));

Administrative Regulation ("AR") 99-10 also addresses the pre-termination meeting, which provides for:

- at least 24-hour notice of the meeting (Ex. 2, § 2);

- giving the employee "notice of the grounds for discipline," "a brief explanation of the employer's evidence," and "an opportunity for the employee to tell his side of the story" (§ 3);

AR 99-7 also addresses post-termination appeals, and provides for:

---

[3]  Plaintiff correctly notes that Defendant failed to set out these introductory facts as numbered facts, within the requirements of D.N.M.LR-Civ.56.1(b), but Plaintiff does not dispute these facts.   Plaintiff also points out that the documents presented as exhibits by Defendants were not produced during discovery, since discovery in this case has not yet formally commenced.   Plaintiff contends that these exhibits are not "amenable to review on a motion for summary judgment," (Doc. 23 at 2), but offers no legally cognizable objection to these documents.   Most of these documents are related to the circumstances surrounding Plaintiff's termination and the related administrative hearings, which the Court would assume Plaintiff has in her possession.   The Court therefore finds no reason why it should not consider these documents for purposes of ruling on this motion.

- removal of the appointed Hearing Officer, and includes that the Hearing Officer has authority to "hear and decide motions relating to" jurisdiction, discovery, production of documents and evidence (§3B-3E);

- a hearing at which the City has the burden of proof, allowing each party to submit testimony and documents, conduct cross, and offer rebuttal evidence (§3F); a record of the Administrative Appeal will be made (§3H);

- the Hearing Officer may sustain or reject the City's decision in writing, "based upon the context of the alleged violation or violations of the provisions of the Personnel Rules" (§3G), and this decision is final (§2).

Plaintiff acknowledges that she received a copy of the Personnel Rules, knew she could be disciplined for a violation of them, and knew her duties included abiding by them.   Cory Styron, the Department Head, recommended termination of Plaintiff's employment on June 11, 2013, in an eight page document.   A pre-termination meeting was set for and held on June 18, 2013.  At the pre-termination meeting, Plaintiff provided three documents opposing termination of employment and addressing the recommendation for termination, as well as a previous Written Reprimand, and a previous PIP.   Mr. Styon provided Robert Mayes, City Manager, a report of the pre-termination meeting and other relevant documents.   The City, through Mr. Mayes, ended Plaintiff's employment on June 27, 2013.  Ex. 11.  The City, through Acting City Manager Robert Campbell, supplemented the bases for termination on November 20, 2013.  Ex. 12.

Plaintiff requested a post-termination Appeal, which was conducted on September 17, 2013.  The Hearing Officer completed a report.   The report indicates that the City offered seven witnesses, and Plaintiff offered none.  Witnesses were not sworn in, but each stated she/he would testify truthfully.   The City and Plaintiff each offered exhibits.   The City's evidence offered at least ten examples of misconduct by Plaintiff, violating eight terms of the Personnel Rules.  The Hearing Officer "confirmed" the factual bases of all ten examples of misconduct, and found that

Plaintiff violated seven Personnel Rules.  Although Plaintiff did not offer witnesses, through her exhibits and her counsel's cross-examination, her arguments were acknowledged.  The Hearing Officer rejected Plaintiff's contentions, and Plaintiff was subsequently terminated.

Plaintiff offers no material facts to rebut any of the above facts.    In her responses to Defendants' facts, she claims she did not receive discovery, and did not receive a full due process hearing.    However, Plaintiff provides no evidence that she ever requested, but was denied, the opportunity to conduct discovery, as is provided in AR 99-7.    Neither does she present any actual facts which would suggest she was denied the opportunity to receive any of the other items which are included in the City's Personnel Rules and administrative regulations and which are considered part of a "full due process hearing," as the Court discusses more fully below.

## II.    Stipulated Dismissal With Prejudice of Counts VII and VIII

The parties have stipulated to the dismissal of two of the four counts, Counts VII and VIII.    Count VII is styled as "42 U.S.C. § 1983 Retaliatory Discharge" in which Plaintiff essentially claims that despite having a "constitutionally-protected property interest in continued employment," the City terminated Plaintiff's employment in retaliation for her taking leave pursuant to the Family Medical Leave Act.    In Count VIII, Plaintiff asserts "Wrongful Termination," in which Plaintiff claims that while the City's Personnel Rules establish that employees falling under Plaintiff's job classification could be disciplined or terminated for cause only, Plaintiff was wrongfully terminated in the absence of cause.  Some discussion of these claims is warranted, since each party agrees to dismiss these claims for different reasons, and the Court finds that these claims would not have survived even if Plaintiff had not stipulated to dismissal.

8

A.     Count VII:  "§1983/Retaliatory Discharge/FMLA"

In Count VII, Plaintiff alleges that her employer retaliated against her and punished her because she took leave under the FMLA.  Defendants claim that Count VII fails because § 1983 does not create a remedy for alleged violations of the FMLA, and that the remedial scheme contained within the FMLA is sufficiently comprehensive, precluding §1983 remedies.   The Court's review of the available case law is consistent with this argument.  *See, e.g., Diaz v. Michigan Dept. of Corrections,* 703 F.3d 956, 959 (6th Cir. 2013) (FMLA contains comprehensive statutory remedial scheme that is more restrictive than remedies provided under §1983, thus precluding plaintiff from utilizing §1983 as a recovery vehicle); *Blessing v. Freestone*, 520 U.S. 329, 341 (1997) (Congress may forbid recourse to § 1983 by, inter alia, "creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983."); *Kilvitis v. County of Luzerne*, 52 F.Supp.2d 403, 419 (M.D.Pa.1999) (The FMLA provides "comprehensive remedial measures that evinces Congress' intent to foreclose the use of a § 1983 action."); *Cisneros v. Colorado,* 2005 WL 1719755, *10 -11  (D.Colo.,2005) (". . . courts prohibiting § 1983 claims based on a violation of the FMLA have noted that 'it would be anomalous to hold that when the only unlawful employment practice consists of a violation of the FMLA, the plaintiff can bypass the restrictions on the plaintiff's right to bring and maintain the action under the FMLA by framing the cause of action as one brought under § 1983'");[4] *cmp Jaramillo v. J.C. Penney, Inc.,* 102 N.M. 272 (Ct.App. 1985) (state discrimination statute is exclusive remedy for discrimination).

---

[4]  *Cisneros* noted that the vast majority of district courts addressing the issue have held that Congress intended the "specific remedies set forth in § 2617[to] be the exclusive remedies available for a violation of the FMLA," citing numerous district court cases.  *See* 2005 WL 1719755, at *10.

Count VII suffers from other infirmities not mentioned by Defendants.  Nevertheless, the Court cannot help but question whether it is even possible to bring a retaliatory discharge claim under §1983.  *See Malone v Calif. State College, Stanislaus,* 1993 WL 51303, *3 (9th Cir. 1993) ("it is not clear whether [plaintiff's] retaliatory discharge and disparate impact claims are cognizable under §1983").  It is well recognized that a plaintiff may use § 1983 to enforce not only rights contained in the Constitution, but also rights that are defined by federal statutes.[5] *See Maine v. Thiboutot*, 448 U.S. 1 (1980).   This means that an allegation of "retaliatory discharge" must come within the confines and context of a specific constitutional or statutory right.  *See, e.g., Yatvin v. Madison Metro. Sch. Dist*., 840 F.2d 412, 418-19 (7th Cir.1988) (Fourteenth Amendment will not support a claim for retaliatory discharge brought under section 1983); *Foster v. Wyrick*, 823 F.2d 218, 220-21 (8th Cir.1987) (Fourteenth Amendment will not support a disparate impact claim brought under § 1983).  *Greenwood v. Ross,* 778 F.2d 448, 455 (8th Cir. 1985) (Title VII claim of retaliation may not be basis for a retaliatory discharge claim in a §1983 action).  Thus, the bald assertion of a "retaliatory discharge" claim is simply not compatible with the assertion of a §1983 claim.

Moreover, a generic "retaliatory discharge" is a state common law claim, and so it is not clear why there is any reference at all to §1983 in Count VII.   *See Jeffers v. Butler,* 762 F.Supp.309-310 (D.N.M. 1990) (New Mexico recognizes retaliatory discharge as a cause of action *in tort* for an employee wrongfully discharged in violation of a clear public policy) (emphasis added).  The availability of this claim is reserved for at-will employees and arises where an at-will employee is terminated in violation of a public policy.  *Vigil v. Arzola*, 102

---

[5]   Thus, an individual could allege retaliatory discharge under §1983 in a First Amendment claim .  *See, e.g., Craven v. Univ. of Colo. Hosp. Authority*, 260 F.3d 1218 (plaintiff asserting "retaliatory discharge" claim under §1983).  Here, however, Plaintiff styles Count VII as "§1983 Retaliatory Discharge" without it being premised on any constitutional amendment.   Instead, the claim is based on alleged violations of the FMLA, which itself provides the requested relief and precludes a §1983 claim.

N.M. 682, 688 (Ct.App.1983); *Silva v. Amer. Fed. of State, Cty and Mun. Employees,* 131 N.M.

364, 365 (2001) (Plaintiff who is not at-will cannot pursue action for tort of retaliatory discharge

under public policy exception").   Because Defendants argue that Plaintiff received the process

that was due an employee who was terminated for "cause," it is assumed that Defendants are not

taking the position that Plaintiff was an at-will employee.  Plaintiff maintains she could only be

fired for cause. Plaintiff would therefore be precluded from bringing a retaliatory discharge claim

in the first place because she is not an at-will employee.

B.     Count VIII:  "Wrongful Termination"

Defendants challenge Count VIII, acknowledging without expressly noting that this claim

is identical to a state common law retaliatory discharge claim.   *See Salazar v. Furr's Inc.,* 629

F.Supp. 1403, 1407 (D.N.M. 1986) (noting that New Mexico "recently recognized the tort of

wrongful discharge in *Vigil v. Arzola,* 1092 N.M. 682 (Ct.App. 1983)").

In Count VIII, Plaintiff alleges that Defendants terminated her in the absence of cause.  In

alleging "wrongful termination," it is not clear on what legal theory Plaintiff relies.   As a breach

of an implied contract, it has already been alleged in Count VI.  *See Silva,* 131 N.M. at 366 (tort

of retaliatory discharge is not available to an employee who "is protected against wrongful

discharge by another cause of action" such as breach of an employment contract).   If alleged as

a "retaliatiory discharge" claim, Plaintiff would have to show that she is an at-will employee and

that she was terminated in violation of a public policy.   Defendants construe Count VIII as a

state common law "retaliatory discharge" claim, contending that Plaintiff has not identified any

public policy which was allegedly violated.   *See Shovelin v. Cent. New Mexico Elec. Co-op.,*

*Inc.*, 1993-NMSC-015, 115 N.M. 293, 303, 850 P.2d 996, 1006 (stating that the "linchpin of a

cause of action for retaliatory discharge is whether by discharging the complaining employee the

11

employer violated a "'clear mandate of public policy'") (citing *Vigil v. Arzola*, 102 N.M. 682, 688, 699 P.2d 613, 619 (Ct.App.1983)).  Per the Court's discussion above, Plaintiff's contention that she could only be fired for cause would also preclude her from asserting this claim.

For all of these reasons, Counts VII and VIII would not survive summary judgment even if the parties had not stipulated dismissal of these claims with prejudice.  Of course, considerable time and effort would have been saved on the part of defense counsel having to defend these meritless claims, had Plaintiff's counsel been more meticulous in drafting the complaint, and had he possessed a better grasp of the legal theories before asserting these claims in the complaint.

**III.     Substantive Due Process: Count V ("Interest in Continued Employment")**[6]

In Count V, Plaintiff asserts that she had a legitimate expectation of continued employment with the City based upon the existence of an implied contract of employment found in the City's policies, practices and procedures and that the City needed to find "just cause" in order to terminate her.

Defendants are correct that any alleged interest in continued employment is not a constitutionally-created fundamental right.   However, property interests are not created by the Constitution, but by existing rules or understandings that stem from independent sources, "such as state law—rules or understandings that secure certain benefits and that support claims of entitled to those benefits."  *Darr v. Town of Telluride, Colo.,* 495 F.3d 1243, 1251 (10th Cir. 2007) (citing *Board of Regents v. Roth,* 408 U.S. 564, 577 (1972)).   A state-created property right may constitute a substantive right sufficient to afford the individual certain procedural due process rights, that is, notice and an opportunity for a hearing."  *Roth*, 408 U.S. at 569.

---

[6]  While not styled as a "substantive due process claim," Plaintiff emphasizes in her response brief that Count V is "unrelated to *procedural* due process and is related to [Plaintiff's] *property* right in continued employment.  Doc. 23 at 5 (emphasis in original).

12

To create a property interest, the state-law rule or understanding must give the recipient "a legitimate claim of entitlement to [the benefit]." *Id.* For example, an employee may possess a property interest in public employment if she has tenure, a contract for a fixed term, an implied promise of continued employment, or if state law allows dismissal only for cause or its equivalent. *See id.* at 576-77, 92 S.Ct. 2701; *Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Greene v. Barrett,* 174 F.3d 1136, 1140-41 (10th Cir.1999).

Defendants do not argue that Plaintiff was an at-will employee, in which case Plaintiff would not be entitled to any due process.    At-will employees lack a property interest in continued employment. Bishop, 426 U.S. at 345 n. 8, 345-347, 96 S.Ct. 2074.  *See Darr v. Town of Telluride, Colo*., 495 F.2d 1243, 1252 (10th Cir. 2007) ("At-will employees lack a property interest in continued employment") (citing Bishop v. Wood, 426 U.S. 341 (1976)).    Instead, Defendants concede that the Employment Handbook at issue "may be" an implied contract giving rise to an expectation that certain procedures would be followed before Plaintiff was terminated.    See Doc. 15 at 7.    Also, throughout its discussion, Defendants rely on cases involving employees who could be fired for "cause," and were not at-will employees.    It certainly does not appear that Defendants are taking the approach that Plaintiff did not have a legitimate expectation that she could only be fired for cause.    Thus, in its analysis, the Court starts from the assumption that because Plaintiff is not an at-will employee, and could only be fired for cause, Plaintiff possesses a state-created property right under Tenth Circuit precedent.

However, in this circuit, it is undecided whether this property right is protected by the substantive due process clause. *See Hennigh v. City of Shawnee*, 155 F.3d 1249, 1257 (10th Cir.1998) (noting that circuit precedent "does not clearly delineate what specific property interests in employment are fundamental, and thus protected by the doctrine of substantive due

process"); *Curtis v. Okla. City Pub. Schs. Bd. of Educ.*, 147 F.3d 1200, 1215 n. 17 (10th Cir.1998) (noting that "it is unclear" whether an interest in continued employment is protected by substantive due process); *Potts v. Davis County,* 551 F.3d 1188, 1193 (10th Cir. 2009) (noting that is "not decided whether an employee with a property right in state-created employment is protected by the substantive due process clause"); *but see Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 528 (10th Cir.1998) (This court has held that a tenured employee "possessed a property interest deserving of substantive protections of the Fourteenth Amendment").   For this reason alone, Plaintiff's claim in Count V fails.

The Court may, for argument's sake, assume that Plaintiff does possess a substantive right in her continued employment at the City, which some courts have done.   *See, e.g., Archuleta v. Colo. Dep't of Insts.*, 936 F.2d 483, 489 n. 6 (10th Cir.1991) (assuming without deciding that the plaintiff had a property right in continued public employment, but noting that the law is "not clear what interest is required to trigger substantive due process guarantees"). Plaintiff's claim would still fail under the appropriate legal standard, which simply requires that a termination not be arbitrary or capricious.   *Butler v. Rio Rancho Pub. Schs. Bd. of Educ.*, 341 F.3d 1197, 1200-01 (10th Cir.2003) (a substantive-due-process claim, if viable, requires assessing whether a governmental action is arbitrary, irrational, or shocking to the contemporary conscience); *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 528 (10th Cir.1998); *Curtis v. Okla. City Pub. Schs. Bd. of Educ.*, 147 F.3d 1200, 1215 (10th Cir.1998) (a public employee with a property interest in continued employment has a substantive-due-process right not to be terminated for arbitrary or capricious reasons).[7]

---

[7]  Plaintiff relies on *Darr v. Town of Telluride,* which the Court has discussed above, for the proposition that the court in that case reviewed a public employee's substantive due process claim in the context of the meaning of an implied contract.   Resp. at 6.   *Darr* does not stand for this proposition at all.   *Darr* recognized that plaintiff's employment interest was protected by procedural due process, but found that it was "*unclear* whether the interest is

It is undisputed that Plaintiff received both a pre- and post-termination hearing, was given the opportunity to engage in cross-examination and to present witnesses and conduct discovery. The fact that Plaintiff never sought to present these witnesses or request discovery (since Plaintiff presents no evidence that could create a factual dispute that she was denied the same), has no bearing on the actions taken by Defendants.  Plaintiff was not terminated until she had been offered all the process that was available to her under the terms and provisions of the Personnel Rules which are contained in the Employee Handbook, as well as the Administrative Regulations governing pre- and post-termination hearing.

Although the focus for Count V is whether Plaintiff is entitled to substantive due process in her alleged right to continued employment, the discussion necessarily considers procedural due process rights.  It is not necessary to create a bright line between substantive and procedural due process for the purposes of analyzing this claim.  The Tenth Circuit has noted that it is unrealistic to treat procedural and substantive due process as "completely separate matters."  In *Archuleta v. Colo. Dept of Institutions*, the  plaintiff was erroneously terminated after a pre-termination hearing, but was reinstated with back pay at a post-termination hearing.   Thus, the Tenth Circuit noted, the procedure required by the Due Process Clause served its purpose because "it protected the plaintiff against arbitrary state action by restoring to her the property that was taken."   936 F.2d at 491.

Based on the above discussion, the Court finds that the law is unclear on whether Plaintiff's expectation of continued employment was a right that was entitled to substantive due

---

also protected by substantive due process."  147 F.3d at 1220, n.17 (emphasis added).  Because the district court in *Darr* concluded it "need not determine" whether plaintiff has a property interest entitled to substantive due process protection because that plaintiff had failed to establish a "genuine issue of material fact whether the Board acted arbitrarily and capriciously" in voting to terminate his employment.  *Id.*

process, but even if it was, Plaintiff was not terminated arbitrarily or capriciously and therefore Defendants are entitled to summary judgment on Count V.

## IV.    Breach of Implied Contract of Employment (Count VI)

Defendants suggest that the Personnel Rules which govern employment, and which are contained in the Employment Handbook ("Handbook") "may be" an implied contract.  Doc. 15 at 7.   To reach the level of creating a contractual right, the terms of the employer's representation must be sufficiently explicit to create a reasonable expectation of an implied contract.  *See Trujillo v. Northern Rio Arriba Elec. Co-op, Inc.,* 131 N.M. 607, 616 (2001); *Hartbarger v. Frank Paxton Co.,* 115 N.M. 665, 669 (1993) ("A promise, or offer, that supports an implied contract might be found in written representations such as an employee handbook, in oral representations, in the conduct of the parties, or in a combination of representations and conduct."  An employee's expectations of an implied contract "must satisfy a certain threshold of objectivity" before they can be considered "reasonable." *Kiedrowski v. Citizens Bank*, 119 N.M. 572, 575 (Ct.App.1995).

The Employee Handbook included certain terms and provisions of employment outlining the process for disciplining and terminating an employee where Plaintiff had a legitimate and reasonable expectation in that process.   *Cmp. Garrity v. Overland Sheepskin Co*., 121 NM 710 (1996) (plaintiff's "general feeling" that she would always have a job if she did good work does not support an implied contract to fire only for just cause, especially when written personnel policy reserves the right to fire employees "without notice for any reason").

## A.    Progressive Discipline

Plaintiff contends that there was a preference or practice of progressive discipline, which she claims she did not receive.  Resp., Suppl. Fact No. 2.   However, while the express language

of the Handbook includes provisions outlining a disciplinary process, it does not in any way promise or even suggest that the City had to follow a certain procedure for all employees.  Under the language of the Handbook, the "disciplinary authorities" "**may**" take the actions set forth in the provisions, and a "**may**" reprimand an employee for cause.   Ex. 1 (Personnel Rules, Art. 7 "Disciplinary Actions") (emphasis added).   Notwithstanding Plaintiff's interpretation to the contrary, this language clearly does not offer an expectation that certain disciplinary procedures were *required* to be followed in every instance.   *Hartbarger*, 115 N.M. at 672 (the reasonableness of the expectation is measured by how definite, specific, or explicit the representation or conduct was).  There can be no breach of a term that was never promised in the first place; therefore, Plaintiff's claim of breach based on progressive discipline fails.

In addition, Plaintiff *did* receive the progressive discipline which she claims was not forthcoming.   She received a "Verbal Written Reprimand" on April 22, 2013 for three violations: (1) providing incorrect purchase dates to the City's legal representative in regards to a warranty Plaintiff incorrectly claimed a merchant was not honoring; (2) failing to ensure that more than twenty lifeguards were property certified with the American Red Cross; and (3) failing to purchase a lift for a pool to ensure ADA compliance.  Ex. 14.   Plaintiff was required to participate in a PIP following a Human Resources investigation into concerns with Plaintiff's work performance.   Plaintiff received another reprimand on June 3, 2013 for proposing a "switch" in jobs to her subordinate without first discussing the matter with her supervisor.  Ex. 16 ("Notice of Written Reprimand").   Plaintiff offers no evidence which would dispute that she received these reprimands.   Thus, even if the Personnel Rules did indicate a preference for progressive discipline, Plaintiff received the benefits of these rules.   Count VI fails on this ground as well.

B.      Claims Based on Hostile Work Environment and Retaliation

Plaintiff also alleges that the City's policy of zero tolerance for workplace harassment and hostility and its policy of non-retaliation created an implied contract which Defendants breached.    As Defendants note, these issues were never "part and parcel" of the Hearing Officer's determinations at any of the hearings.   However, this claim fails as a matter of law for another reason.

An employee might reasonably expect an employer to conform to certain terms of the handbook.   However, it is not reasonable to expect that the provision for zero-tolerance for work-related discrimination and harassment provision be read to guarantee an employee a safe, secure and nonthreatening atmosphere such that where an employee finds the atmosphere less than safe, secure and nonthreatening, the employer can be sued under a contract theory.   The City's policy cannot be read as sufficiently explicit to give rise to such an expectation.   *Hartbarger*, 115 N.M. at 672 (to create an implied contract, the offer or promise must be sufficiently explicit to give rise to reasonable expectations).    Moreover, the Tenth Circuit has held that claims of workplace harassment, hostility and retaliation are properly brought as part of the relevant federal laws which provide protection from such conduct.   *See, e.g., Garley v. Sandia Corp.,* 236 F.3d 1200, 1210-11 (10th Cir. 2001) (Labor Management Relations Act preempted breach of implied contract claim where documents on which claim was based were inextricably intertwined with collective bargaining agreement).[8]   Therefore, Defendants are entitled to summary judgment on

---

[8]   *See Clayton v. Vanguard Car Rental, U.S.A., Inc*.,761 F.Supp.2d 1210, 1277 , 281-82 (D.N.M. 2010) (anti-discrimination policy in employee handbook that "strictly prohibited" harassment or discrimination constituted "mere declarations" of the employer and were "not sufficiently specific to create an implied contract"); *Daniels v. United Parcel Service, Inc.*, 797 F.Supp.2d 1163, 1196–97 (D.Kan.2011) (finding implied contract claim barred because it was based on the same retaliation alleged under Title VII and other federal anti-discrimination statutes); *see also Hartnett v. Papa John's Pizza USA, Inc*., 912 F. Supp. 2d 1066, 1097 (D.N.M. 2012) (assuming employer failed to follow its written harassment policy, employee handbook read as a whole undermined any claim that employee reasonably understood her at-will status was impliedly altered by the policy).

Plaintiff's claims of implied breach of contract based on the City's alleged violation of its zero-tolerance for discrimination and harassment.

## C.   Alleged Breach Based on Termination Without Just Cause

Defendants present substantive evidence of the reasons for which Plaintiff was terminated, including negligence in the performance of duty, failure to meet prescribed standards at work, and incompetence.  Doc. 15-2 at 14.  All of these are listed as "cause" for discipline, which includes termination, under the City's Personnel Rules.  *See* Ex. 1 (Art. 7, §21-7-1). Defendants also provide a copy containing a discussion of the evidence supporting Plaintiff's termination for the listed reasons.  Doc. 15-2 at 15-22.  Plaintiff offers no evidence or testimony which would rebut this evidence or create a triable fact issue.   Therefore, Defendants are entitled to summary judgment on this issue as well.

## D.   Due Process

Count VI of the complaint does not include any allegations which can be construed as allegations of deprivations of procedural due process.  However, in her response, Plaintiff adds claims of denial of due process in that "no discovery took place, no testimony was taken, and no evidentiary rules guided the course of proceedings."[9]

### 1.   Pre-Termination Hearing

In the context of her pre-termination hearing, Plaintiff was entitled to what AR-99-10 provided, which was oral or written notice of the grounds for discipline, a brief explanation of the employer's evidence, and an opportunity for the employee to tell her side of the story.   Ex. 2. Plaintiff does not dispute that this meeting was held (*see* Ex. 6), and does not provide any

---

[9]   Because Plaintiff has not alleged due process violations in the context of her breach of implied contract in Count VI, the Court need not address them.  However, because Plaintiff refers to a non-compliance of "policies, practices and procedures" in Count V, the Court will address them here as well, as part of the due process that Plaintiff was entitled to under the Employee Handbook.

evidence that she did *not* receive what AR-99-10 provided.  Thus, there can be no breach where Plaintiff received all that was due.

### 2. Post-Termination Hearing

Similarly, Plaintiff does not dispute that she received a post-termination hearing, or an Appeal or that she was represented by counsel.  *See* Ex. A (noting that Plaintiff's attorney ws present at the hearing).   She infers that the City violated its implied contract because the Hearing Officer was a non-attorney, but Plaintiff does not point to any term or provision in the Administrative Regulations or Personnel Handbook that requires hearing officers to be attorneys. Plaintiff relies on a New Mexico case, *Shovelin v. Central New Mexico Elec. Coop., Inc.,* that does not bolster her case at all.    Plaintiff claims that in *Shovelin*, the New Mexico Supreme Court concluded that "administrative hearings conducted and decided by non-attorneys and where the rules of evidence were set aside, no discovery was had, and no trial allowed did not constitute a full and fair opportunity to litigate.  115 N.M. 293 (1993).   *Shovelin* says nothing of the sort, and counsel's reliance on this case for that proposition is either a result of sloppy research or a misrepresentation of the law.  First, *Shovelin* focused on collateral estoppel and not due process issues (hence, the inquiry into whether plaintiff had received a "full and fair opportunity to litigate").  Second, *Shovelin* does not state that rules of evidence must be used in an administrative hearing (in that case, an "ESD" or "Employment Security Department" hearing).  In fact, the case pointed out just the opposite: that one of the "important differences" between administrative hearings and district court proceedings is that hearings did **not** have to "conform to common law or statutory rules of evidence or other technical rules or procedures." *Id.* at 301.   Also, there is no suggestion in *Shovelin* that an attorney is required for an administrative hearing.

*Shovelin* did find that, similar to a district court proceeding, parties may subpoena witnesses and may present evidence and argument—all of which was available to Plaintiff during her appeal; however, she chose not to avail herself of these opportunities.   The Court has already mentioned that while Plaintiff was entitled to request discovery and to present witnesses, Plaintiff offers no evidence at all that she was denied such requests by the Hearing Officer, who was authorized to make determinations on these issues.  *See* Ex. 3.   One cannot be denied something one did not ask for.  Moreover, Plaintiff's failure to take advantage of the procedural opportunities available to her for her appeal constitutes a waiver of any claims she has that she was denied a right to procedural due process.  *See Kirkland v. St. Vrain Valley Sch. Dist. No. Re-1J*, 464 F.3d 1182, 1194-95 (10th Cir. 2006) (a plaintiff waives his or her right to procedural due process where the plaintiff fails to take advantage of the procedures available) (citing *Sandoval v. Boulder*, 388 F.3d 1312, 1328-29 (10th Cir. 2004); *see also Pitts v. Bd. of Educ. of U.S.D. 305, Salina, Kansas, et al,* 869 F.2d 555, 557 (10th Cir. 1989) (plaintiff who waived post-termination hearing waived due process rights by not taking advantage of "numerous procedural rights afforded by Kansas law").

The last item the Court addresses is the process Plaintiff was due under the United States Constitution.  Plaintiff does not specifically assert federal due process claims in her complaint, but peppers her response brief with contentions that she was denied "procedural and substantive safeguards." *See, e.g.,* Doc. 23 at 9.   Such contentions have no merit because Plaintiff received all the due process to which she was entitled under the federal constitution.   A full evidentiary hearing is not required prior to an adverse employment action.  *West v. Grand County,* 967 F.2d 362, 367 (10th Cir. 1992) (citing *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 545 (1985)).  At her pre-termination hearing, Plaintiff was entitled to two things only: notice and an

opportunity to respond.  967 F.2d at 367; *Loudermill* at 546; *Hennigh v. City of Shawnee*, 155 F.3d 1249, 159 (10th Cir. 1998) (a plaintiff is not entitled to an extensive or formal pre-termination hearing if there are adequate post termination procedures).   She received both at her pre-termination hearing, and presents no evidence to the contrary.

In determining whether a post-termination hearing comports with federal due process, courts take into consideration whether an employee had an opportunity to confront and cross-examine his accuser in the presence of the decisionmaker.  *West,* 967 F.2d at 369.  However, "confrontation and cross-examination . . . are not rights universally applicable to all hearings." *Id.; Wolff v. McDonnell,* 418 U.S. 539, 567 (1974); *see, e.g., Rosewitz v. Latting*, 689 F.2d 175, 177–78 (10th Cir.1982) (holding that a post-termination hearing before a grievance review board comported with due process despite the fact that the employee was not allowed to confront and cross-examine witnesses against her).   While federal due process entitles Plaintiff to "more formal due process protections," *West,* 967 F.2d at 369, Plaintiff was never denied what she alleges was due her.  She called no witnesses and has not produced any evidence that she was ever denied a request to produce witnesses.  She also produces no material dispute of fact that she requested but was denied the opportunity to conduct discovery.

Based on the foregoing discussion, Defendants are entitled to summary judgment on Count VI.  Plaintiff was entitled to nothing more than what she was entitled to under the terms of the Personnel Rules and Administrative Regulations.  Plaintiff may not agree with the result of the process, which ended with her termination, but she did receive the benefit of those terms and provisions, and would have been entitled to no more under federal due process.

**CONCLUSION**

In sum, the Court finds and concludes that Plaintiff's affidavit fails to comply with the relevant standards governing Rule 56(d) affidavits, and thus is insufficient to invoke the protections of Rule 56(d).   Plaintiff's request for discovery pursuant to Rule 56(d) is therefore DENIED, and the Court rules on the summary judgment motion without allowing further discovery for Counts V-VIII.

The parties have stipulated to dismissal with prejudice of Counts VII and VIII. Moreover, based on Defendants' motion on these claims as well as the Court's independent analysis, these claims would be subject to dismissal on the merits.

The Court further finds and concludes as to Count V that the law is not clear on whether Plaintiff's expectation of continued employment was a right which is entitled to substantive due process.  However, even if it was, Plaintiff was not terminated arbitrarily or capriciously and therefore Defendants are entitled to summary judgment on Count V.

Finally, the Court finds and concludes that Defendants are also entitled to summary judgment on Count VI on all of the issues raised by Plaintiff as alleged breaches of an implied contract.

**THEREFORE,**

**IT IS ORDERED** that Defendants' Motion for Summary Judgment as to Counts V through VIII of the Complaint (**Doc. 15**) is hereby GRANTED for reasons described in the above Memorandum Opinion and Order.

_____
UNITED STATES DISTRICT JUDGE